## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| **MARK PASEK**, an individual, **MEREDITH CARR**, an individual, **PATRICIA MORGAN**, an individual, **STEVEN MORGAN**, an individual, and **JAMES MOLENAAR**, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**CRYSTAL K. KINZEL,** in her official and individual capacities,<br><br>Defendant. | **CIVIL ACTION**<br><br>**Case No. 2:21-cv-020**<br><br>**Judge: John L. Badalamenti**<br><br>**Mag. Judge: Nicholas P. Mizell** |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COME the Plaintiffs, **MARK PASEK** ("PASEK"), **MEREDITH CARR** ("CARR"), **PATRICIA MORGAN** ("P. MORGAN"), **STEVEN MORGAN** ("S. MORGAN"), and **JAMES MOLENAAR** ("MOLENAAR")(collectively "**PLAINTIFFS**"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 15, and state the following for their Amended Complaint:

## CAUSES OF ACTION

1.     This is an action brought under 42 U.S.C. §1983 (§1983) and the Family & Medical Leave Act (FMLA) for (1) violation of their First Amendment right to engage or not engage in political activity without coercion or deprivation

1

of employment (*Elrod/Branti* claim), (2) violation of their First Amendment right to engage in political speech, (3) interference in violation of the FMLA, and (4) retaliation in violation of the FMLA.

## PARTIES

2.     Plaintiff **PASEK** is an individual and a resident of Florida who currently resides, and at all material times resided, in Lee County, Florida. He was employed by the Defendant from July 5, 2017 to September 1, 2020 and was employed as an Auditor.

3.     Plaintiff **CARR** is an individual and a resident of Florida who currently resides, and at all material times resided, in Collier County, Florida. She was employed by the Defendant from 2006-2008 and 2015 to September 1, 2020 and was employed as a Recording Clerk I at the time of her termination.

4.     Plaintiff **P. MORGAN** is an individual and a resident of Florida who currently resides, and at all material times resided, in Collier County, Florida. She was employed by the Defendant from October 2002 to September 1, 2020 and was employed as a Director of Board Minutes & Records.

5.     Plaintiff **S. MORGAN** is an individual and a resident of Florida who currently resides, and at all material times resided, in Collier County, Florida. He was employed by the Defendant from June 2002 to September 1, 2020 and was employed as an Assistant Director of Information Technology.

6.     Plaintiff **MOLENAAR** is an individual and a resident of Florida who currently resides, and at all material times resided, in Collier County, Florida. He was employed by the Defendant from 2014 to May 12, 2020 and was employed as the Manager of Internal Audit and subsequently promoted to Sr. Legal Counsel by **KINZEL**.

7.     Defendant, **CRYSTAL K. KINZEL** is the current Collier County Clerk of the Circuit Court and Comptroller, an elected position she has held since 2018 when she was appointed to the position following the death of then-Clerk, Dwight Brock. Prior thereto, **KINZEL** joined the Office of the Collier County Clerk of Courts, serving as the Director of Finance until 2016 when Clerk Dwight Brock named her his Chief Deputy. **KINZEL**'s primary roles are to serve as the accountant and guardian of county taxpayer money, which was forecast to be $1.4 billion as of 2020, serve as clerk to the board of commissioners and maintain court and official county records. Her salary in 2020 was $147,293.

8.     At all times relevant to the instant action, **KINZEL** was Plaintiffs' employer within the meaning of 42 U.S.C. §1983 and each Plaintiff is a "person" within the meaning of §1983. At all times relevant to the instant action, the Defendant was Plaintiffs' employer within the meaning of the FMLA.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction of this matter under 28 U.S.C. §1331.

10.     Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiffs reside in either Lee or Collier County, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiffs' claims occurred in Collier County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.02(b)(5) since Collier County is within the Fort Myers Division.

## GENERAL ALLEGATIONS

11.     Each of the Plaintiffs always performed their assigned duties in a professional manner and were very well qualified for their respective positions.

12.     Each of the Plaintiffs met all necessary performance standards and quantitative performance requirements during their employment.

13.     None of the Plaintiffs were Chief Deputy Clerks and thus were not immediate subordinate employees of **KINZEL**.

14.     While **KINZEL** required the Plaintiffs to execute a document titled "Oath & Acceptance" when she assumed her office in 2018, **KINZEL** did not appoint the Plaintiffs to be "deputy clerks" within the meaning of F.S. §28.06, particularly because (a) no Plaintiff was vested with "each and every power of whatsoever nature and kind as the clerk may exercise," (b) **KINZEL** afforded them to act "only to the extent and in such manners as authorized by [**KINZEL**]… and [only] within the scope of the statutory duties assigned to that office," and (c) to

the extent any compliance with F.S. §28.06 was met, **KINZEL** subsequently cancelled any such authority granted to the Plaintiffs.

15.     None of the Plaintiffs had the same duties and powers as **KINZEL** under state or local law. Indeed, none of the Plaintiffs possessed full signing authority in **KINZEL**'s absence, nor did **KINZEL** ever grant them the same.

16.     None of the Plaintiffs' positions required political affiliation, nor is party affiliation an appropriate requirement for the effective performance of their respective job duties.

17.     In fact, **KINZEL**'s Employee Handbook explicitly "[a]ssure[s] fair and equitable treatment in all aspects of personnel administration without regard to… political affiliation."

18.     **KINZEL** reaffirms that in her Employee Handbook, which states: "The Clerk of the Circuit Court is an Equal Employment Opportunity employer. Consistent with applicable Federal and State law, it is the policy of the Clerk that all applicants for positions and employees of the Clerk shall be assured fair and equitable treatment in all aspects of personnel administration without regard to… political affiliation…"….

19.     In fact, **KINZEL** reassured the Plaintiffs and all employees that any employee or management personnel involved in any such political discrimination "will be subject to corrective action, up to and including dismissal." The only

political activity or speech **KINZEL** prohibited was engaging in the same during working hours.

20.    None of the Plaintiffs were policy-makers or alter-egos of **KINZEL**, nor did they owe any political loyalty to **KINZEL** since such was explicitly not a condition of their employment.

21.    In 2020, **KINZEL** faced an election for her position.

22.    **KINZEL**'s challenger was **MOLENAAR**, a longtime public servant, who began working for the clerk's office in 2014 as manager of internal audits.

23.    **MOLENAAR** was fired as senior legal counsel in May 2020 by **KINZEL** just days after he completed and publicly filed to run for her position.

24.    During **MOLENAAR**'s termination, **KINZEL** communicated that she was terminating **MOLENAAR** as a direct result of what was him having exercised his First Amendment rights by filing paperwork to run against her in the upcoming election.

25.    However, **MOLENAAR** was not employed by **KINZEL** as an "officer" as that term is defined by F.S. §99.012(1) and he was simply a regular employee.

26.    After being fired and during his candidacy, **MOLENAAR** was critical of the clerk's handling of the coronavirus pandemic and highlighted the mishandling of a phishing scam that cost the office $184,000 as one of the reasons to improve audit and internal control protocols.

6

27.    After **MOLENAAR** filed his pre-qualifying paperwork with the Supervisor of Elections, the Plaintiffs supported his campaign and its message, and did so in various ways including, but not limited to: volunteering with **MOLENAAR**'s campaign to solicit donations on his behalf, setting up his campaign website, setting up payment portals for campaign donations, making donations, placing yard signs on their private property displaying their public support for **MOLENAAR**, setting up a FaceBook page for **MOLENAAR**'s campaign, publicly posting supportive comments on that FaceBook page, disseminating information about **MOLENAAR**'s campaign and its' message, suggesting to voters that they vote for **MOLENAAR** and not **KINZEL**, attending campaign events and even wearing t-shirts voicing their support for **MOLENAAR**.

28.    However, they never engaged in such speech or public support for **MOLENAAR** in the workplace, nor did they engage in any conduct that could be perceived to be disruptive to the normal operation of the workplace. All was done on their personal time and in their capacity as citizens.

29.    Nevertheless, **KINZEL** discovered the Plaintiffs' speech and support for **MOLENAAR** and was irate.

30.    After **MOLENAAR** lost to **KINZEL** in the primary election on August 18, 2020, **KINZEL** turned her attention to those that had supported her opponent,

terminating each of the other Plaintiffs in successive meetings on September 1, 2020.

31.     During the termination meetings, **KINZEL** read a prepared, typed statement to each Plaintiff stating that she (**KINZEL**) "no longer had trust and confidence in your abilities necessary to carry out the duties and functions" of the Plaintiffs' respective positions. **KINZEL** provided no other reason and no specifics, except for responding to **PASEK**'s question as to why he was being fired that "if you think long and hard about it, you'll know exactly why."

32.     However, **KINZEL** authorized a spokesman to provide a public comment to the news media that stated the Plaintiffs were terminated because their positions were eliminated, which was false.

33.     The only positions that were being "eliminated" were those held by the Plaintiffs who were known to **KINZEL** to have engaged in speech and support for her political rival and never were the Plaintiffs informed their positions were supposedly being eliminated at the time they were terminated.

34.     At no time were the Plaintiffs ever even informed their position could be subject to elimination, nor was there a realistic possibility of the same given that their positions had all been fully budgeted and the Clerk's Office was operating at a surplus.

35.     As a direct and proximate result of supporting **MOLENAAR**'s campaign and the Plaintiffs' speech and expression related thereto, **KINZEL** terminated the Plaintiffs.

36.     As such, the **PLAINTIFFS** were wrongfully terminated in violation of the First Amendment.

## COUNT I – POLITICAL PATRONAGE RETALIATION IN VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION VIA 42 U.S.C. §1983

37.     Plaintiff incorporates by reference Paragraphs 1-36 of this Complaint as though fully set forth below.

38.     This is a claim for violation of Plaintiffs' First and Fourteenth Amendment rights to freedom of speech and association consisting of a prohibited termination from employment based on political patronage, as defined by the Supreme Court in *Elrod v. Burns* and *Branti v. Finkel*, brought pursuant to 42 USC §1983.

39.     At all material times, the Plaintiffs were employees and **KINZEL** was their public employer.

40.     None of the Plaintiffs' positions were positions for which political affiliation or political loyalty is an appropriate requirement for the effective performance of the public office or the execution of the duties of the positions and no overriding governmental interest exists in conditioning Plaintiffs' occupancy of their respective positions upon political loyalty or affiliation.

9

41.    The Plaintiffs were terminated because of their perceived political loyalties.

42.    **KINZEL**'s acts as alleged herein were in knowing and willful disregard of the Plaintiffs' First Amendment rights.

43.    The conduct complained of was taken under color of the laws of the State of Florida.

44.    The conduct taken was an expression of **KINZEL**'s custom, policy or usage. The person who engaged in the conduct complained of – **KINZEL** as Clerk of Court – may fairly be said to constitute the official expression of **KINZEL**'s custom, policy or usage within the Clerk of Courts.

45.    As the direct result of **KINZEL**'s conduct, the Plaintiffs have been subjected to deprivation of their rights as secured and protected to them by the First and Fourteenth Amendments to the Constitution of the United States, and have been thereby damaged.

46.    As a direct and proximate result of the violations referenced and cited herein, the Plaintiffs have lost all of the benefits and privileges of their employment and have been substantially and significantly injured in their career path.

47.    As a direct and proximate result of the violations referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated

against them, the Plaintiffs are entitled to all relief necessary to make them whole as provided for under 42 U.S.C. §1983.

48.    As a direct and proximate result of **KINZEL**'s actions, the Plaintiffs have suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

**WHEREFORE**, Plaintiffs request trial by jury of all issues so triable as of right, and:

i.    Injunctive relief directing this Defendant to cease and desist from all retaliation against employees who engage in speech or conduct protected by the First Amendment of the United States Constitution;

ii.    Back pay and all other benefits, perquisites and other compensation for employment which Plaintiffs would have received had they maintained their positions with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii.    Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits, or reinstatement;

iv.    Reimbursement of all expenses and financial losses Plaintiffs have incurred as a result of the Defendant's actions;

v.    Declaratory relief declaring the acts and practices of the Defendant to

be in violation of the statutes cited above;

vi.    Reasonable attorney's fees plus costs;

vii.    Compensatory damages, and;

viii.    Such other relief as this Court shall deem appropriate.

## COUNT II – FREE SPEECH RETALIATION IN VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION VIA 42 U.S.C. §1983

49.    Plaintiffs incorporate by reference Paragraphs 1-36 of this Complaint as though fully set forth below.

50.    At all material times, Plaintiffs were employees and **KINZEL** was their public employer.

51.    Plaintiffs' political speech involved matters of public concern and was made as private citizens as the topics of their speech did not involve their own job duties or personal grievances and instead were on matters of public concern.

52.    Plaintiffs' free speech interests outweighed the **KINZEL**'s interest in silencing Plaintiffs as their speech did not interfere with the effective and efficient fulfillment of the **KINZEL**'s responsibilities.

53.    Plaintiffs' political speech was not within their ordinary job duties.

54.    Plaintiffs were qualified for the positions that they held with **KINZEL**.

12

55.     Plaintiffs were terminated by **KINZEL** as a direct and proximate result of their exercising their constitutional right to engage in free speech.

56.     **KINZEL** would not have caused Plaintiffs' terminations in the absence of their exercising their constitutional right to engage in free speech.

57.     **KINZEL** has violated Plaintiffs' First Amendment right to freedom of speech.

58.     **KINZEL**'s acts as alleged herein were in knowing and willful disregard of the Plaintiffs' First Amendment rights.

59.     The conduct complained of was taken under color of the laws of the State of Florida.

60.     The conduct taken was an expression of **KINZEL**'s custom, policy or usage. The person who engaged in the conduct complained of – **KINZEL** as Clerk of Court – may fairly be said to constitute the official expression of **KINZEL**'s custom, policy or usage within the Clerk of Courts.

61.     As a direct and proximate result of the violations of Plaintiffs' free speech rights, as referenced and cited herein, Plaintiffs have lost all of the benefits and privileges of their employment and have been substantially and significantly injured in their respective career paths.

62.     As a direct and proximate result of the violations of Plaintiffs' First Amendment rights, as referenced and cited herein, and as a direct and proximate

result of the prohibited acts perpetrated against them, Plaintiffs are entitled to all relief necessary to make them whole as provided for under 42 U.S.C. §1983.

63.   As a direct and proximate result of **KINZEL**'s actions, Plaintiffs have suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

**WHEREFORE**, Plaintiffs request trial by jury of all issues so triable as of right, and:

    i.    Injunctive relief directing this Defendant to cease and desist from all retaliation against employees who engage in speech or conduct protected by the First Amendment of the United States Constitution;

    ii.    Back pay and all other benefits, perquisites and other compensation for employment which Plaintiffs would have received had they maintained their positions with the Defendant, plus interest, including but not limited to lost salary and bonuses;

    iii.    Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits, or reinstatement;

    iv.    Reimbursement of all expenses and financial losses Plaintiffs have incurred as a result of the Defendant's actions;

    v.    Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statutes cited above;

vi.    Reasonable attorney's fees plus costs;

vii.    Compensatory damages, and;

viii.    Such other relief as this Court shall deem appropriate.

## COUNT III – FMLA INTERFERENCE – PASEK, CARR & S. MORGAN

64.    Plaintiffs Pasek, Carr and S. Morgan[1] incorporate by reference Paragraphs 1-12 of this Complaint as though fully set forth below.

65.    In the months immediately preceding their respective terminations, the Plaintiffs required FMLA leave.

66.    Plaintiffs qualified for FMLA leave under 29 U.S.C. § 2611(11); 29 CFR §§ 825.113(a); 825.800 since Plaintiffs began suffering from serious health conditions, had worked for more than 1,250 hours in the previous 12 months, the FMLA defining a serious health condition as an illness, injury, impairment, or physical or mental condition that involves treatment by a health care provider.

67.    Plaintiffs informed **KINZEL** of their likely need for leave for their own serious health conditions.

68.    **KINZEL** was responsible for designating leave as FMLA-qualifying and for giving notice of the designation within five business days, absent extenuating circumstances, after she has enough information to make that determination, such as when she receives medical certification.

---

[1]    As used in this Count, the term "Plaintiffs" refers to Pasek, Carr and S. Morgan.

69.    If **KINZEL** was to have decided that Plaintiffs' absence was not FMLA-qualifying, she must have notified them of this fact in the Designation Notice under 29 CFR § 825.300(d)(1).

70.    **KINZEL** has never provided Plaintiffs with any notice disqualifying their FMLA leave.

71.    In fact, **KINZEL** determined that Plaintiffs were eligible for leave under the FMLA and yet interfered with their rights by terminating their employment because of (a) their request for federally protected FMLA leave, (b) their taking of that leave, and (c) their request for reinstatement.

72.    The Defendant knew, or should have known, that Plaintiffs were exercising their rights under the FMLA and was aware of Plaintiffs' need for FMLA-protected absences.

73.    Plaintiffs complied with all of the notice and due diligence requirements of the FMLA.

74.    **KINZEL** was obligated, but failed, to allow Plaintiffs to take FMLA leave and to return Plaintiffs, employees who requested and took FMLA leave, to their former position or an equivalent position with the same pay, benefits, and working conditions when they tried to return to work under 29 U.S.C. § 2614(a)(1); 29 CFR § 825.215(a).

75.     In fact, **KINZEL** terminated **CARR** and **S. MORGAN** the same day they attempted to return to work from their FMLA leave, and she terminated **PASEK** very shortly after his exercising his right to take intermittent FMLA leave.

76.     **KINZEL** interfered with the Plaintiffs' rights under the FMLA.

77.     As a result of the above-described violations of FMLA, Plaintiffs have been damaged by **KINZEL** in the nature of lost wages, salary, employment benefits and other compensation and is therefore entitled to recover actual monetary losses, interest at the prevailing rate and liquidated damages.

WHEREFORE, Plaintiffs request trial by jury of all issues so triable as of right, an award of damages for lost wages and benefits, prejudgment interest, and liquidated damages under 29 U.S.C. § 2617(a)(1)(A), reinstatement or such other legal or equitable relief as may be appropriate, and an award of reasonable attorney's fees and costs as authorized under 29 U.S.C. § 2617(3), and any other such damages as this honorable Court deems just.

## COUNT IV – FMLA RETALIATION – PASEK, CARR & S. MORGAN

78.     Plaintiffs Pasek, Carr and S. Morgan[2] incorporate by reference Paragraphs 1-12 of this Complaint as though fully set forth below.

79.     Plaintiffs informed **KINZEL** of their likely need for leave for their own respective serious health conditions.

---

[2]     As used in this Count, the term "Plaintiffs" refers to Pasek, Carr and S. Morgan.

80.    Plaintiffs qualified for FMLA leave under 29 U.S.C. § 2611(11); 29 CFR §§ 825.113(a); 825.800 since Plaintiffs began suffering from a serious health condition, had worked for more than 1,250 hours in the previous 12 months, the FMLA defining a serious health condition as an illness, injury, impairment, or physical or mental condition that involves treatment by a health care provider.

81.    **KINZEL** was responsible for designating leave as FMLA-qualifying and for giving notice of the designation within five business days, absent extenuating circumstances, after she had enough information to make that determination, such as when she receives medical certification.

82.    If **KINZEL** was to have decided that Plaintiffs' respective absences were not FMLA-qualifying, she must have notified them of this fact in the Designation Notice under 29 CFR § 825.300(d)(1).

83.    **KINZEL** has never provided Plaintiffs with any notice disqualifying their FMLA leave.

84.    In fact, **KINZEL** determined that Plaintiffs were eligible for leave under the FMLA.

85.    **KINZEL** knew, or should have known, that Plaintiffs were exercising their rights under the FMLA and was aware of Plaintiffs' need for FMLA-protected absence.

86.    Plaintiffs complied with all of the notice and due diligence requirements of the FMLA.

87.     Plaintiffs engaged in activity protected by the FMLA when they (a) requested federally protected FMLA leave, (b) took that leave, and (c) requested reinstatement, consistently informing **KINZEL** of the same.

88.     A causal connection exists between Plaintiffs' request for FMLA-protected leave and their termination from employment with **KINZEL** because Plaintiffs engaged in statutorily protected activity by requesting FMLA leave.

89.     In fact, **KINZEL** terminated **CARR** and **S. MORGAN** the same day they attempted to return to work from their FMLA leave, and she terminated **PASEK** very shortly after his exercising his right to take intermittent FMLA leave.

90.     **KINZEL** retaliated by altering the terms and conditions of Plaintiffs' employment by terminating Plaintiffs' employment because they engaged in the statutorily protected activity of requesting FMLA leave, taking FMLA leave and requesting reinstatement.

91.     **KINZEL** engaged in willful and intentional retaliation in violation of the FMLA by terminating Plaintiffs' employment because they engaged in activity protected by the FMLA.

92.     As a result of the above-described violations of FMLA, Plaintiffs have been damaged by **KINZEL** in the nature of lost wages, salary, employment benefits and other compensation and is therefore entitled to recover actual monetary losses, interest at the prevailing rate and liquidated damages.

**WHEREFORE**, Plaintiffs request trial by jury of all issues so triable as of right, an award of damages for lost wages and benefits, prejudgment interest, and liquidated damages under 29 U.S.C. § 2617(a)(1)(A), reinstatement or such other legal or equitable relief as may be appropriate, and an award of reasonable attorney's fees and costs as authorized under 29 U.S.C. § 2617(3), and any other such damages as this honorable Court deems just.

## DEMAND FOR JURY TRIAL

**NOW COME** the Plaintiffs, by and through their undersigned attorneys, and demand a jury trial under Federal Rule of Civil Procedure 38 on all issues triable of right by a jury in this action.

Respectfully submitted,


Dated: February 24, 2021        **/s/ Benjamin H. Yormak**
                                Benjamin H. Yormak
                                Florida Bar Number 71272
                                Trial Counsel for Plaintiffs
                                YORMAK EMPLOYMENT & DISABILITY LAW
                                9990 Coconut Road
                                Bonita Springs, Florida 34135
                                Telephone: (239) 985-9691
                                Fax: (239) 288-2534
                                Email: byormak@yormaklaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 24, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: None.

**<u>s/ Benjamin H. Yormak</u>**
Benjamin H. Yormak
